## CHASE NAT. BANK OF CITY OF NEW YORK et al. v. MOBILE & O. R. CO. et al.

### Civil Action No. 56.

District Court, S. D. Alabama, S. D.

July 5, 1941.

See, also, 37 F.Supp. 453.

S. R. Prince and Henry L. Walker, both of Washington, D. C., for Southern Ry. Co. and Mobile & O. R. Co.

Mudge, Stern, Williams & Tucker, of New York City, and Rushton & Rushton, of Montgomery, Ala., for Chase Nat. Bank of City of New York and Carl E. Buckley, as successor trustees under Mobile & O. R. Co.'s refunding and improvement mortgage dated as of July 1, 1927.

Mahorner & Mahorner, of Mobile, Ala., for Mrs. Alleen G. Barker and for First Nat. Bank of Mobile, Ala., as successor trustee under M. & B. S. Ry. Co.'s first mortgage dated May 1, 1899.

Smith & Johnston, of Mobile, Ala., and Mitchell, Taylor, Capron & Marsh, of New York City, for City Bank Farmers Trust Co., as trustee under Mobile & O. R. Co.'s general mortgage of May 15, 1888, and debenture trust deed of May 1, 1879.

William McLeod, of Mobile, Ala., for First Nat. Bank of Mobile, as trustee for C. E. Ervin and T. M. Stevens, receivers.

Gordon, Leigh, Leigh & Gordon, of Mobile, Ala., for Gatch, Tennant & Co.

William J. Kane, of Baltimore, Md., for Railroad Credit Corporation.

Lyons & Chamberlain, of Mobile, Ala., for Hudson County Nat. Bank.

Rushton & Rushton, of Montgomery, Ala., and Stewart & Shearer, of New York City, for United States Trust Co. of New York, as successor trustee under Mobile & O. R. Co.'s trust indenture dated September 1, 1930.

George W. Jaques, of New York City, for Reorganization Committee.

Larkin, Rathbone & Perry, of New York City, and Harry T. Smith & Caffey, of Mobile, Ala., for Central Hanover Bank & Trust Co., as trustee under the first mortgage of the Montgomery Division of Mobile & O. R. Co.

ERVIN, District Judge.

This matter comes on to be heard on exceptions to Master's report in which he found that $427,175.38 in the hands of the Receiver, at the time of the filing of the petition to have the earnings of the railroad impounded, and the income from certain property not covered by the mortgages of the railroad, and the proceeds from the

sale of such uncovered property, called the free property, should not be allocated to the payment of priority claims, so that there would not be any of such sums for distribution among the general creditors.

In the brief of the attorneys representing the exceptions they say "the issue is between common creditors not entitled to priority of payment out of mortgaged income, and the bondholders, whether the common creditors shall bear the burden of the expenses incurred by their Receivers in earning the mortgaged income." This makes me think of the interview between the Prophet Nathan and King David.

In the first place the Receivers were not the receivers of the common creditors. They were the representatives of the preferred creditors, the secured creditors, the common creditors, and of the Court.

Should the Court juggle the allocation of the money so as to make the only cash that could possibly be used for a distribution among the common creditors pay the expenses, and the prior claims, so that the secured creditors should get a larger dividend, and still participate in any dividend among the general creditors by reason of their deficiency judgments?

The Receivers were appointed in 1932 under a bill filed by a common creditor, for himself and all who would come in, and seeking the preservation of the railroad property for whoever might ultimately be entitled to it.

They operated the road from 1932 to 1937 when the Trustee under one of the mortgages intervened and prayed that the earnings be impounded.

The Court granted this prayer. At that time the Receivers had in their possession the sum of money heretofore mentioned. The request for impounding was delayed five years, during which time the Receivers were operating the road.

■ How can we now know from what sources this money came? Equity favors the diligent and not the procrastinators.

In the brief of the exceptors is found a quotation from the case of Mortgage Loan Co. v. Livingston, 8 Cir., 45 F.2d 28, 32, in which I find the following: "The appointment of the receiver was not opposed by the mortgagees, and they at once, through their attorney, notified the receiver of the conditions of their mortgage and their claim upon the rents and issues, and requested that the rents and issues from this particular property be separately accounted for. * * * and hence it cannot be said that the mortgagees are precluded from asserting their rights thereto by having remained silent, or by having acquiesced."

■ Shortly after the appointment of the Receiver he, having secured the consent of the Court, borrowed $1,070,599 from the Reconstruction Finance Company for the purpose of paying taxes and necessary expenses.

He gave them Receiver's Certificates to secure them, pledging all the railroad property, and before January 20, 1937, he had paid $220,599 of such certificates, and thereafter, and before the sale of the railroad paid the remaining $850,000, the interest having been paid as it fell due.

There seems to be no .proof as to the funds out of which these payments were made.

It is contended that the sums paid to the R. F. C. should be charged against the earnings and the proceeds of the sale of the unmortgaged property.

It is conceded that the sum owing the R. F. C. is a prior claim to that of the mortgagees, but it is contended that it must be assumed that this debt was paid with the money not covered by the mortgages.

Does equity demand any such assumption?

The possession of the Receivers during all the time being that of preferred, secured, and common creditors, and of the Court, so it gave no one class greater rights than the others.

How could it be assumed that the possession of the Court would give any advantage to any class?

The exceptions to the report of Jack Meredith as Master will be overruled.